Our next case for argument is 2018-2335 Chang Soo Floring vs. United States. This is a bit of a complex case with an appeal and a cross-appeal. So for the five separate companies I represent that remain in the order, I have five minutes for my presentation, and they're going to run the time consecutive, so I have to stop it at ten minutes, essentially. So our appellants, after all these eight years of litigation, have been assigned de minimis margins with no evidence of dumping whatsoever, yet not excluded from the order. And we have submitted in our briefs that that violates Chevron 1 and Chevron 2, and so I'd like to just briefly explain why it violates Chevron 1. This Court previously found in the earlier panel decision relying substantially on Albemarle that the statutory scheme is representative, that once you depart from the mandate to review each respondent individually, you're in a different territory where the mandatory respondents stand in the shoes of all the non-mandatory cooperating respondents. And so we believe that the statutory scheme is clear and does not contemplate the third path that the government has taken in this fifth remand that was upheld by the lower court. And the statute would have had multiple opportunities to make clear that there was this new second  order. It could have been in the main provision of the statute, the all others provision of the statute, the sampling provision of the statute, or the voluntary respondent provisions of the statute to say, oh, by the way, you don't get out. So just to be clear, if you think this falls under Chevron step one, then you're saying the statute is neither ambiguous nor silent. So what is the statutory provision that you believe absolutely gives your clients an out from under the anti-dumping duty order? Under Chevron one. Yes. You're saying Chevron one gives you a waiver, right? So what is the precise statutory section that you think is neither ambiguous or silent and absolutely gives your clients out from under the anti-dumping duty order? Well, it's the effect of final determination. Now, which statutory section? Tell me what number. 1673, small d, paren small c. Hold on, 1673. Small d, paren c, one, parens capital B, small i. Oh, boy, that's too many little things. Hold on. So I'm at 1673 d. C. Now go to section c. Yes, d, then paren c. Wait, wait, wait, wait, wait. C, effect of final determinations, that's c? Right. Okay, then now what? It shall determine the estimated weighted average margin for each exporter individually investigated. I don't see where shall determine is. I'm at c. Where do I go after c? And then paren one. Yes. Paren capital B. Okay. Paren small i. All right. The administrative authority shall that. So it's basically first saying that every producer should be individually investigated and then says shall determine in accordance with paragraph five the estimated all others rate for exporters not individually investigated. And so they're basic, this, when read together, it has to be read together with the sampling provision. You can't split this apart. Okay, wait. So I don't see where this says anything at all about an anti-dumping duty order and you're not continuing to be subject to it. What am I missing? Well, that's why I'm saying that we are, our position is that the court has to read these various provisions together. That when the sampling provision contemplates that the all others respondents will, their outcome will be determined by the sample, by the sample selected by the commerce department. Because otherwise, the application of the dumping order. Okay, so just to be clear, your argument is leaving me completely without any sort of firm conviction that you're right under Chevron step one. Because you're not able to articulate precisely where the statute brings it all together. You're sort of amorphously using your hands a lot, which is not good for a Chevron step one argument. So why don't you go to whatever your Chevron step two argument is, because I don't see in the statute where Congress has been neither ambiguous nor silent in your favor on the question of whether you get out from under the anti-dumping duty order. So go to your, go to your, whatever your next argument is. Well, and this is addressed at page 24 of our brief. If there is a gap to fill, the Congress has given commerce the authority to fill it, unless the way they filled the gap is arbitrary, capricious, or manifestly contrary to the statute. So here you have a situation where the government has found no evidence whatsoever that the all others companies were dumping, yet semi-permanently applied an anti-dumping order to them. And so we would argue that that is arbitrary, capricious, and manifestly contrary to the statute. But essentially, the only link between their permanent application of the dumping order to them is the Commerce Department's discretionary allocation of its resources, that it decided to spend resources reviewing other mandatory respondents in other cases rather than more mandatory respondents in this case. So you wanted them to review you individually? Well, we did, the five plaintiffs in this case, and now I'm under my 10 minutes, did not request individual review initially, but in the course of the third and fourth remands, we offered a tremendous amount of information to the government. And the government said no, we have to do full review or nothing, but they never said because there's a regulation that doesn't let you out if we don't do full review. Okay. Okay, do you want to save the rest of your time? Yes. I have three minutes for rebuttal, but I also have a cross appellate, so that's two minutes. A cross appellate. Very confused. Who's going, I'm sorry, who are you? What are you doing? Your Honor, Tim Brightville, Wiley Ryan. I'm on behalf of Petitioners, the Coalition for American Hardwood Parity. So we're the petitioners in the case. And so notwithstanding, may it please the Court. You want everybody included under the order to the maximum extent. Exactly. So notwithstanding the arguments you heard, the Court of International Trade correctly upheld the Commerce Department's decision not to revoke the orders against the appellants who received a 0% margin on remand but never sought voluntary respondent status. However, we also maintain that the Court incorrectly ordered Commerce to permanently exclude voluntary applicants that were eventually assigned a 0% margin on remand. Can you pause for just one second? I'm sorry. How are you on, first off, why do you have 15 minutes? Pause the time. Why do you have 15 minutes? And secondly, how are you on the same side as him? I don't understand. I don't have 15 minutes. He is the appellant. He gets, as the appellant, he gets 15 minutes of time. So who are you and why do you get this time? You're the petitioner. We are the petitioners but also the cross-appellants. You're cross-appellants. You two guys are against each other, right? Correct. And you're sitting right next to each other. Correct. No, they're not. It was a separate appeal. So we have our appeal to show that only the government is really, I mean, he's not arguing with us. I got one blue brief. I'm confused. And why do you have 15 minutes? I need some clarification before you keep going. Sure. Your Honor, we don't have 15 minutes as petitioners. But we are split because we challenged the lower court's ruling just as the appellants did. We present those arguments initially. You're not a blue brief. You're a yellow brief, a red brief. But what are you? Where's your brief? Our brief is... I've only got one blue brief. Our brief is the opening and response brief of defendant and cross-appellant. You're one of the two red briefs here. Correct. I've never seen a red brief guy sit on this side of the podium. He's an appellant. Because we are an appellant, that was our understanding of the way the time would be split. And we, I apologize, Your Honor, but we did work this out in advance. Yes. Any advice on how to proceed? All right. And you're arguing which position again? You're saying everybody should be put under the order? Correct. You're saying nobody should get out, not even the voluntary response? That's correct. And you're not defending any aspect of the trade court's decision? No, we've given our time to the government to defend those aspects. So we did, in our brief, presented the affirmative arguments. The government will defend the decision it made below. Okay. Sounds like those two people split 15 minutes. So put the clock. Okay. I'm just going to let you go and I'll cut you off when I feel like I need to, which means you have no clue when that's coming. So this is the fear that you're going to live under. Go ahead. I understand, Your Honor. So Commerce correctly concluded that according to the plain language of the statute, exclusion from the dumping order does not apply to any separate rate respondents that have a zero percent margin. So there is no statutory... And just to be clear so I can look at the sum total of what Commerce said about this, should I be looking at essentially the page 469 of the appendix? Is that... There's a lot of discussion about in general the separate rate people are not going to be excluded, but is this the only page where Commerce talks about that subset of the separate rate people who wanted but were denied individual investigation? The fifth remand results, yes. But what's the specific page? Is this A469? Which I guess is page 24 of the fifth remand results. If I've got... That's... July 21st, Commerce determination. Yes, that's correct. Starting at 469, yes. Starting it. I mean, it ends not too soon after that too, doesn't it? And then, of course, the Court of International Trade's decision as well. So there isn't... Is your understanding is that we are reviewing the Commerce decision in the same way that the Court of International Trade was reviewing the Commerce decision? Correct. So the Commerce... The Court of International Trade said there's something very strange about treating the would-be individually investigated companies the same as the ones that didn't even volunteer. And at least in thinking about that as a matter of... Did Commerce have a good reason for treating them the same? I would have to look at this page to find the good reason, right? Yes, and you can also look at the statutory scheme, and so I'd like to address that. Judge Moore, you asked whether this is a Chevron 1 or a Chevron 2 argument, and in our view, it is both. And so the Chevron 1 argument is to point out that there is a defined statutory term for weighted average dumping margin. That is 19 U.S.C. 1677 35B in the definitional section. Defines the term weighted average dumping margin as the aggregate dumping margin determined for a specific exporter or producer. So a weighted average dumping margin is only calculated for a specific exporter or producer, not for voluntary respondents, not for separate rate respondents. So based on that, the statutory scheme treats all separate rate respondents the same. So once Commerce identifies that a Chinese company is a separate rate respondent, it can receive a 0% margin, but it cannot be permanently excluded from an anti-dumping order. So Commerce therefore properly concluded under Chevron 1 that the plain language of the statute... I'm sorry, so where is the statutory provision that talks about exclusion from an anti-dumping duty order? I must say I don't think I could find one. Well, there is... There's a provision about exclude from a determination. Mm-hmm. The exclusions... Well, there's a reference to de minimis dumping margins as well. Ignore them in the course of making a determination. Mm-hmm. Correct. Isn't this whole idea of excluding from the order, which is to say excluding them from being subject to administrative reviews, suspension of liquidation, cash deposits, and the requirement to submit information... My understanding, and you can correct me if I'm wrong, those are the three consequences we're talking about for an exporter-producer whose goods are coming into the United States but that has been determined, however, to be subject to a zero rate. Mm-hmm. Yes, Your Honor. That that's the consequence we're talking about under the heading of exclude from the order. I believe that's correct, Your Honor, yes. And I'm not quite sure... You're making a statutory argument that... I'm not quite sure where the statutory argument comes from without a statute that even talks about the concept of excluding from an order. Well, it's because, again, there's a calculation of a weighted average dumping margin, but it's only for specific exporters or producers, which means, in this case, the three companies that were individually examined. And therefore, those are the three to whom all of those potential consequences apply, including exclusion from the order. In other words, there has to be a weighted average dumping margin calculated in order for those other consequences to apply. Okay, so you've got the same hand thing going as the first guy... I apologize. ...and I'm not buying your Chevron 1 argument either. The hand is to tell. I don't know if you play poker, but when you have to waive when you're doing a Chevron 1 argument, it's not in the statute. So move on to whatever Chevron 2 argument you have for why these people ought to be in there. Sure. Under Chevron 2, you look at Commerce's regulations, which limit the eligibility for exclusion from an order to companies that have been individually investigated. So that is 19 CFR Section 351, 204E. And it specifically refers to... exclusion applies to an exporter or producer for which the Secretary determines an individual weighted average dumping margin. So... So that says, here are some people we're going to exclude. Where does it say, except for those people, everybody's in? So there's a whole separate provision then for determining the all-others rate. That is... That's a statutory provision for determining the rate that would apply to all the other parties, which is 1673 little d C A. So... But the exclusion provision is separate from the provisions for the weighted average dumping margins of the other parties, and that's what never happened here. So, again, there's a separate provision in the regs that states the only parties that can be excluded are those that have an individual weighted average dumping margin. Where does it say that only part? That's the part that's not there. It says for which the... I'm sorry, 19 CFR 351, 204E... Yeah, I'm there. I'm already there. I don't see the word only. For which the Secretary determines an individual weighted average dumping margin. I think the point is, it says those people are hereby authorized to be excluded. Correct. But you keep using the word only those people. Where's that? Well, those are the parties that have had an individual weighted average dumping margin calculated under the statutory term, and that has to be for a specific export, one that is individually and fully examined, one whose questionnaire responses are submitted, one whose responses are verified. Okay, I think we have your argument, and we've way exceeded your time. So unless there's any objection, let's hear from the government. Thank you. Good morning. We're not going to hear from you about what we've just been talking about. I think you start her at 15 minutes for now. Just do that, and I'll cut her off. So we've split our time. I'm supposed to take eight minutes. I think that'll work out. I take eight, and then the other cross. Yeah, but he gave you some of his, but he used all his, so I don't know what you got. Go ahead. Okay, I'll just go. In answer to your question, I am not speaking on the voluntary respondent part of the Court of International Trades' decision. We haven't taken a position on that. Why not? So we disagree with the decision, so we had an opportunity to appeal it, obviously. We don't have authorization to appeal it. As to whether we could have spoken to it in some other way, it would have been extremely awkward for us to, because as you can tell, this wasn't really raised. It certainly wasn't raised before the Court of International Trade. It wasn't in the party's complaint. It became an issue during the argument before the trade court, during which we indicated to the trade court that it was our position that the issue had been waived. Commerce has never addressed the issue, so we had no final determination to defend or to hang our hat on in any way. So if we had filed a brief... Commerce didn't address this at A469-470? So Commerce is responding in that portion of the remand determination to a comment by Fine Furniture on page 461 of the remand determination. And here's the comment. It's about most of the way down. It starts... Are we at... I'm sorry, you said... I'm on page 461 of the remand determination, where Commerce goes through all the comments that it's received. Fine Furniture says that the department ignores the full questionnaire responses that are on the record and that it requested to be a voluntary respondent. Thus, the department's claim that the regulation should not be applied to separate rate respondents carries no water with respect to Fine Furniture, whose actual behavior is on the record. So what Fine Furniture is saying is, all of our information is here, just look at it. Fine Furniture never claimed before the trial court that because it was a voluntary respondent, it deserved different treatment. The trial court raised this sui sponte during argument, during which we said that our position was that that had been long waived, and then the trial court found as it found, we did not have authorization to appeal that determination. What is the consequence for Commerce's forward-going discretion on this issue? Is your understanding that the result of... If we were to affirm the CIT, that on the terms that the CIT wrote, that Commerce could or could not undertake consideration of this issue, namely whether the... Everybody seems to call them voluntary respondents. The voluntary respondents should stay within the order in circumstances like this, or be excluded, or is Commerce foreclosed from that by the CIT decision, assuming that decision was... Right, so if this court were to affirm the CIT decision in full, including that portion of it, I don't think that Commerce would have... Why? I don't want to hear you say that. Why? If you're telling me Commerce has not actually ever taken a position on the voluntary respondents, that's what you're saying. You're saying Commerce didn't take a position on it. You're saying we didn't even take a position on the CIT because all the position we took was it was waived. Then we're in a vacuum. The statute doesn't speak to this in my view. The statute does not speak to this. Commerce would theoretically have the discretion to speak. Now, courts, when an agency hasn't exercised that discretion and there's a vacuum, courts can step in and say, based on policy or other grounds, what the answer should be, because we have to decide cases, but it's for Commerce to decide policy. If you're telling me Commerce hasn't decided this policy question, then if we affirm the CIT, why wouldn't it still be a completely open issue available for Commerce to consider? I think it would depend upon the scope of the court's holding. If the court holds... I'm way out of my lane here because it's not something that we've briefed and that we have explicitly not taken a position on, but I think that if the court were to hold that under Chevron 2 it was reasonable for the voluntary respondents to be excluded from the order, I think then there is a window for Commerce to determine something different in another case. But it depends. If the court holds somehow under Chevron 1, then I think Commerce's I mean, did I give you the slightest inclination that I was going under Chevron 1? It would be again, it would be hard to say because it would depend on how the court characterized its holding for the voluntary respondent aspect of the decision because if it did it in such a way as to foreclose For example, if we were to hold it would be unreasonable for Commerce to ever conclude that. That would make it very difficult for you to come around, right? But if we were to accept your position, which as I understand it and confirm for me if this is your position Commerce did not take a position on whether the voluntary respondents must continue to be bound under the anti-dumping duty order. That is correct. So Commerce did not take a position. Correct. So if we read the CIT as saying basically on the record that I have in front of me, which doesn't actually include a position and explanation, I don't see why it's reasonable and therefore I'm going to make you exclude these people. That doesn't foreclose Commerce the next time from squarely addressing the issue and creating a different record. Right, assuming that this court didn't somehow foreclose it. So I have about a minute and a half so I'll get to the issue that we actually are defending and again I think this is a easy Chevron 2 question. The statute just doesn't say anything about what you do with all others when it comes time to determining whether there's an order. What the statute says is that you look at the individual weighted average dumping margins to determine whether there should be an order and an order rises and falls on those margins. If there is no weighted average dumping margin that suggests that there's dumping, then there is no order. And one of the things that I want to be sure to do is to point out the chart at the back of Chongzhu's brief where it has a list of all of the times where in its view Commerce has behaved differently. But I want to look at I'm just going to read from the first one and I'm going to represent that they all say the same thing. The first one is an investigation from a market economy country that was terminated. This is what Commerce says. It's short. The department has not calculated an all others rate because it has not reached an affirmative determination. What Commerce says in a situation where there isn't evidence of dumping is it doesn't even get to the all others question. It doesn't calculate a rate. It only cares about whether there is evidence of dumping and evidence of dumping can only be shown by an individual weighted average dumping margin. Unless you're in this situation, which has never happened before, where you have an order that continues to exist by virtue of the non-market economy state entity. Didn't it happen once? Something about glass windshields? It did happen once and nobody really understands why. Because there wasn't any explanation. Can I ask you about voluntary respondents? How often does Commerce take up voluntary respondents' requests? Honestly, not that often, although it does happen. It didn't happen here. It did not happen here. It's not infrequent for Commerce to say we are too busy and we can't take up any voluntary respondents. What I'm trying to figure out is, is it a minority of times where volunteers are taken up on their requests or is it half the time? I would say minority. That would be my best guess. I'll also represent that this conflagration of events is very likely to happen again, where you have all of the mandatories that have gotten zero rates and a statewide entity that exists because there are companies that have failed to cooperate and there are companies that have a voluntary respondent treatment. I think those stars are unlikely to align again. I've gone past the time that it's unlikely to align again. Thank you, Ms. Burke. How much time do you think you have? I think I have five minutes. We'll see. Let's go. Are you the last one? I'm the last one on the appellee. There is one other separate rate respondent who is a voluntary applicant who has two minutes. I'll go quickly. Jill Kramer on behalf of Fine Furniture Shanghai Limited. Let me bring it back to what Judge Gordon found for the voluntary applicants. He said there's some free play in the statute so he went to Chevron 2 and he said that Commerce arbitrarily applied the statute as to the voluntary applicants. That is correct for our client. Fine Furniture submitted over 1,000 pages of questions. I don't think that really you have to talk too long because the government has suggested that Commerce did not make any sort of informed determination regarding the voluntary respondents. I disagree with that contention because from the very first day of the initiation of this case in November 2010 Fine Furniture asked to be a voluntary respondent. It asked Commerce to review its data. Really? Because if you disagree with that there's a chance you lose. Whereas if you agree with it I feel like you're walking out of here with a win unless you weren't listening. Your Honor, I'm sorry. I must have misunderstood the question. I was trying to raise the point that Fine Furniture has been asking Commerce to look at its data but Commerce refused. Despite the fact Yes, but the CIT held in your favor that you should be excluded by virtue of having offered. Right, exactly. Commerce is not denying that that is In fact, they're suggesting they took no real position on the issue of whether you should continue to be bound or not by the anti-dumping duty order which means that the courts need to make that assessment. You've got one court that already said what it said Okay, I'm confused. Where are you playing? I'm agreeing with the decision of Judge Gordon below that Commerce arbitrarily applied the regulations by not entertaining any voluntary applicants. Maintaining an assumption that the voluntary applicants were dumping. I'm sorry, do you want us to vacate and remand and make Commerce look at your data or aren't you just happy to be out from under the anti-dumping duty order? Precisely. I'm trying to state that we agree with Judge Gordon's opinion that by not entertaining any voluntary applicants that Commerce's determination was arbitrary under its own regulations. By not entertaining applicants, its determination was arbitrary. Well, that would suggest then that the remedy would be send it back and make them entertain you. No, Your Honor, I don't believe it would because as Judge Gordon found Commerce, the decision was arbitrary. The Commerce, the court didn't need to send it back because it was an arbitrary and capricious decision. Commerce neglected for all that time to make a decision just as it has here. It has decided not to appeal. It has decided not to pursue this issue. So for that reason I think the court should sustain the decision of Judge Gordon. Okay, why don't we hear from the two-minute person. Wait, I thought it was the lady, no? No. Oh, you're on the same team though? Yes, she's up Thursday. We have another panel on Thursday. So, theoretically, I have two minutes to defend the separate company that was excluded and three minutes to reply on my main appeal for the five that were included. My only point on my separate company that was excluded for having requested voluntary trial and treatment is that although it didn't put a heap of information on the record, unlike fine furniture, it and the other five appellants that got included in the order, in the course of remand three and four, when the judge wanted to open everything up and say, we don't need to make assumptions, the respondents are willing to give you a lot of data, sales databases, all kinds of information, so Commerce could compare these separate companies more closely to the mandatory respondents. We feel that we all were in a position, like fine furniture, to disclose a tremendous amount of information. Except you're not, because you weren't a voluntary respondent. You weren't somebody that asked to be looked at, so you're not in the same position. Well, GICE and the Two Minute Company did ask to be looked at, and then Commerce categorically declined to review them all, and then the judge, in its discretion, tried to open the record, and Commerce said, no, we really want everything or nothing and we don't have the resources to do everything, so we're taking nothing. And then the judge allowed them to infer a penalty to the separate companies based on the non-replying companies, and that's what this first panel overturned. You can't infer dumping to the separate cooperating companies based on the PRC entity. And to get to Judge Chen's question, how often does Commerce take voluntary respondents? Almost never. And that's because they find that it would be too administrative and burdensome? Yes, they just say, we don't have the resources to pick more than the mandatory respondents that we selected, and they usually select two or three at most. So then if all 100 importers volunteer, they kind of know ahead of time that they're not going to get individually examined. Right, so it's a huge waste of time, essentially, because Commerce won't pick them. And if one of the three mandatories quits, Commerce will take a replacement mandatory, or potentially. It's not a huge waste of time, because if you get picked, and you get individual review, and you establish entitlement to the zero, then you're out from under the anti-dumping duty order, right? And if you don't get picked, and if the rule of law that comes out of this case, at least for now, until Commerce looks at it, is that that gets you out from under the anti-dumping duty order, the mere fact that you volunteered and proffered a bunch of data gets you out the same way as if it had been reviewed, then you win there, too. Right? The only... Because hundreds of companies, on a regular rolling basis, every month, would have to submit thousands of pages of documents with a 1% chance of it being considered. But all those companies... If the rule of law that comes from this is all those companies get out from under the anti-dumping duty order, then they don't continue to submit all those documents, correct? We would submit that it's unreasonable to require companies to go through all that when Commerce essentially is never going to pick them. I think the interpretation of the voluntary respondent statute. Okay, so when Commerce is never going to pick them, but if the rule is if you volunteer and proffer the data and they choose not to pick you, you're out. Why is that somehow a bad rule? It will certainly cause us to give that advice to our clients, but many would not spend the hundreds of thousands of dollars for the 1% chance. Well, they're not spending it for the 1% chance they get picked, they're spending it in fact, probably hoping they don't get picked because then they don't have to spend hundreds of thousands of dollars and they get out. So basically it's like the Monopoly get out of jail free card that you get from Commerce. I understand your position. Just to be clear merely making the request without backup data is not what Judge Gordon said suffice. So if He did say merely making the request, but the statute when you read it, Voluntary Respondent, says you also have to timely make all the submissions on the deadline for the mandatory respondent. If we read the current CIT position to be that in the absence of something contrary  to include that is to fail to exclude somebody who asked to be a Voluntary Respondent and supplied full data then it might in fact be very costly to make to meet that threshold. Yes, you're correct Your Honor. These 30 cases in the back of our brief, I mean the Commerce Department is taking the position that we'll never terminate an order because we'll never assign a rate to the all others companies. That means they could never terminate an order. They picked one or two or three mandatory respondents, they're de minimis while they still have to impose the order because they didn't calculate individual rates for the all others. Mr. Menendez, you've way exhausted all of your time. Is there a final thought? Thank you for your patience. That's everybody, right? Nobody's going to try and stand back up again. The cross appellant. No, you used all your time. You don't have any more. We're done. Thank you. Thank you.